JOHN T. GOGGIN *vs.* MARY T. GOGGIN.
OCTOBER 28, 1937.
PRESENT: Flynn, C. J., Moss, Capotosto, Baker and Condon, JJ.

FLYNN, C. J.    This is an action of trespass and ejectment brought by John T. Goggin, as the surviving lessee of the

Colt Farm, so-called, in Bristol, against Mary T. Goggin, who was in possession of said farm. The action was commenced in the district court in Bristol where the plaintiff submitted to a decision for the defendant, from which decision the plaintiff took an appeal under the statute to the superior court. The case was tried before a justice thereof, jury trial waived, and resulted in a decision for the plaintiff for possession and costs. To this decision the defendant duly excepted, and the case is before us upon her exceptions to this decision and to certain rulings of the trial justice made during the course of the trial.

It appears from the evidence that the Industrial Trust Company, a banking corporation, trustee under the will of Samuel Pomeroy Colt, as lessor, entered into a lease of the farm in question with John T. Goggin, plaintiff, and his son, Thomas P. Goggin. as the lessees. The lease was in writing, dated December 14, 1933, for the period of one year, and was renewed in accordance with its provision, by indenture of November 20, 1934, for a further term of three years, to expire on December 31, 1937. The lessees entered into possession under the original lease and together conducted a dairy business on the farm.

On December 11, 1934, the plaintiff sold to his son and cotenant, all his interest in the dairy business, stock and equipment, including all cows, horses, equipment, and farm materials located on the farm. This sale did not include the plaintiff's interest in the lease itself. Thomas P. Goggin, the son, who was the husband of the defendant, continued to carry on the dairy business alone until January 1, 1935, when he died intestate. From that time the defendant personally was living on the farm and conducted the business thereof. She was duly appointed by the probate court of Bristol as administratrix of her husband's estate and, upon her petition, that court gave her permission, as administratrix, to use the personal property of the estate and to continue the business of her deceased husband.

During the lifetime of Thomas P. Goggin, he and his father, as lessees, each paid to the bank one-half of the monthly rental due under the lease. After the former's death, the defendant as administratrix continued to pay her one-half share of the monthly rental, namely $83.33, until January 1, 1936. On December 28, 1935, the plaintiff gave the defendant a notice to quit and vacate the farm and refused to accept any further contributions of one-half of the monthly rental from her. The defendant then refused to surrender possession of the farm to the plaintiff, as required by the notice to quit and, on February 3, 1936, the plaintiff began action against her for possession by a writ of trespass and ejectment, which forms the basis of this case.

The defendant relies upon five exceptions, numbered 1, 3, 13, 16 and 18. The other exceptions set forth in the bill of exceptions are not briefed or argued and are deemed to be waived.

The first exception relates to the allowance of the plaintiff's testimony, in answer to the question: "You are the sole surviving joint tenant?" A. "Yes, sir." The ground of objection relied upon by the defendant is that the plaintiff, having the burden of proof that he was entitled to possession, should have done so by the best evidence, namely, the lease. It appears, however, that the alleged error became harmless in any event, by virtue of the later introduction in evidence by the defendant, without objection, of the lease in question. Under these circumstances, the first exception must be overruled.

The third exception, which is really controlling in the case, relates to the exclusion, during cross-examination of the plaintiff, of the following question: "At the time that the lease was made out, Mr. Goggin, whether or not you and your son were told that it was the intention of the bank, the trustee, under the will, to hold both you and your son for the rent and in the event of your death to hold your heirs, executors or administrators?"

Counsel for the defendant contends that this was proper and material examination to aid the court in correctly interpreting certain alleged ambiguous and doubtful terms in the lease. Parol evidence, he argues, is admissible where it is uncertain in what sense particular terms or expressions are used by the parties in a written document. Its exclusion, he contends, was prejudicial error. In support of this contention, he cites *Hiscox & Pearce* v. *Sanford,* 4 R. I. 55, at 63, where the court said: "Where the proper construction of written instruments *is doubtful,*" evidence of this kind is admitted. (italics ours)

We agree with this case, and others, which approve the admissibility of parol evidence, in a proper case, to explain and clarify ambiguous and uncertain language of a written instrument; but in the instant case, the language of the lease is not, in our opinion, ambiguous or uncertain. The defendant apparently attempted by parol evidence to contradict, rather than to clarify, the terms of the written lease. In our opinion, the instant case comes within the holding of the court in the *Sanford* case, *supra,* where it said, at page 63: "And as we do not consider the construction of the grant in this case doubtful, but, on the contrary, sufficiently clear, we are not warranted in travelling out of the language of the instrument itself to ascertain any different intent of the parties."

The language of the lease is exacting in detail and the mere reading of it gives ample evidence that it was prepared by a skilled and experienced draftsman, who understood clearly the difference between a joint tenancy and a tenancy in common, as well as the effect of "joint and several" obligations. The following excerpts from its language make it sufficiently clear to us that the parties intended to create a joint tenancy in the lessees, rather than a tenancy in common, as urged by the defendant: "Witnesseth—That the lessor . . . does . . . hereby demise and lease unto the lessees,

their executors, administrators and assigns, *as joint tenants*" the so-called Colt farm. (italics ours)

"To Have and To Hold the said demised premises . . . unto the lessees, their executors, administrators and assigns *as joint tenants* for and during the term . . . ." This is confirmed in the fourteenth covenant by the clause: "The lessees, *or the survivor* of them, shall have the right . . . to a renewal of this lease." And again, in the fifteenth covenant, by the definition of certain terms as intended by the parties to that lease, namely: "The expression 'the lessor' and the expression 'the lessees,' whenever used in this lease, shall be construed as including and referring to the heirs, executors, administrators, successors and assigns respectively, of the parties hereto as well as the parties themselves, *whenever such construction is required or permitted by the provisions of this lease and is consistent with the fact that this lease is to the lessees as joint tenants*, and the expression 'the lessees' shall also be construed as referring *to the survivor of the lessees* whenever such construction is required or permitted by the provisions of this lease *in view of the fact that this lease is to them as joint tenants.*" And again, in the last clause of the same covenant appears the following significant limitation, "all the covenants, agreements, . . . shall extend to and be binding upon the heirs, executors, administrators, successors and assigns respectively of the parties hereto *so far as is consistent with the fact that the lessees are* joint tenants." (italics ours)

In our opinion, these express provisions, taken in their context, and a consideration of the whole lease as a co-ordinated document, make it clear that the parties intended that John T. Goggin and his son, Thomas P. Goggin, should take, under the original lease, a leasehold interest as *joint tenants* rather than as tenants in common.

It is argued for the defendant that the "joint and several liability" imposed upon the lessees and their heirs, administrators, executors and assigns to pay the rent reserved in the

lease and to perform its other conditions, throws sufficient doubt on the intention of the parties to permit and require parol evidence to determine their real intention.

A careful reading of the language discloses that the words "joint and several liability" to pay *etc.* were used expertly in relation to the incidents resulting from the lease and not to the kind of tenancy created or the right of survivorship thereunder. In our opinion, it appears clearly that the "joint and several liability" feature of the lease was added in the interest of the bank, as lessor, in order to secure payment and performance under the provisions of the lease. Such language, as used, is not inconsistent with, nor does it render doubtful, the otherwise clear intention to create a joint tenancy in the leasehold.

This is further confirmed by the use, in the fifteenth clause, of the language above quoted, which expressly limits the effect of the joint and several liability, in the event of any possible conflict, in such a way as always to protect the dominant note of joint tenancy and its incidents. Therefore, from the language of the lease itself, we are able to determine the intent of the parties. That language is not ambiguous in this particular sense. It sufficiently satisfies the requirements of our statutes in relation to the creation of a joint tenancy. It follows, therefore, that it was not error for the trial justice to rule as he did, and the defendant's third exception is overruled.

It is argued that the defendant was in possession of the farm, not individually, as sued, but as administratrix, by virtue of the permission granted by the probate court. This forms the basis of the defendant's thirteenth and sixteenth exceptions. But the language of the lease, having disclosed the intention of the parties, and having been interpreted as creating a joint tenancy in the lessees, answers these objections. The plaintiff, as the sole survivor under the joint tenancy, had the legal right to possession of the farm against

the defendant, whether acting individually or in any other capacity.

The probate court did not purport to give the defendant, as representative of the estate of Thomas P. Goggin, any authority to hold possession of that realty against a proper claimant. Such a matter would be beyond its jurisdiction. It merely granted the application of the defendant for permission to use the personal property of the estate and to continue its business which then happened to be located on the farm. If, therefore, the capacity in which the defendant held possession became an issue, it was as a matter of defense and, on the interpretation by the trial justice of the terms of the lease, which we have above approved, the plaintiff's right to possession was paramount to that of the defendant or any person acting individually or in the capacity of administratrix or personal representative of the estate of Thomas P. Goggin.

Whatever references were made by the trial justice in his rescript to the defendant's possible rights clearly were not intended and do not relate to the legal title or the right to possession of the farm under the lease, which was the sole issue before the law court. They refer to possible equitable rights that were not before him. The fifteenth exception, relating to the decision of the trial justice, is therefore overruled.

For the reasons above stated, all of the defendant's exceptions are overruled, and the case is remitted to the superior court for entry of judgment on the decision.

*Quinn, Kernan & Quinn, Michael DeCiantis,* for plaintiff.
*Charles B. Coppen, Emile H. Ruch,* for defendant.